IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JERIMIE LUNSFORD,                                    Civ. No. 6:25-cv-02284-AA

                    Plaintiff,                       **OPINION & ORDER**

        v.

STATE OF OREGON; BENJAMIN
SMITH; WARREN ROBERTS; KAREN
HARRIS; AIMEE HUGHES,

                    Defendants.

_____

AIKEN, District Judge.

        This matter comes before the Court on a Motion to Dismiss filed by Defendant

Warren Roberts.  ECF No. 5.  The Court concludes that this motion is appropriate for

resolution without oral argument.  For the reasons set forth below, the motion is

GRANTED and the claims against Dr. Roberts are dismissed with leave to amend.

                              **LEGAL STANDARD**

        To survive a motion to dismiss under the federal pleading standards, a

pleading must contain a short and plain statement of the claim and allege "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations,"

it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*,

556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id.*

## BACKGROUND

Plaintiff Jerimie Lunsford is in the custody of the Oregon Department of Corrections ("ODOC") at the Oregon State Penitentiary ("OSP"). Compl. ¶ 2. Plaintiff's treating medical providers at OSP are Defendants Dr. Benjamin Smith and nurse practitioner Karen Harris. Compl. ¶¶ 3-4. Dr. Smith and Ms. Harris "provided medical consultation, examination, and/or treatment to Plaintiff" at OSP. *Id.*

Defendant Dr. Warren Roberts was the Chief of Medicine for ODOC from December 2020 through February 2025. Compl. ¶ 5. Roberts "was responsible for final approval or denial of surgical and specialty care" and "provided oversight of all ODOC health services' medical professionals and also provided care to AIC ["Adult-in-Custody"] patients at all ODOC facilities." *Id.*

Defendant Aimee Hughes was the Health Services Administrator for ODOC since March 2021 and, in that capacity, "is responsible for leading, directing, and controlling all ODOC health services activities and ensuring their compliance with state and federal laws." Compl. ¶ 6.

Page 2 –OPINION & ORDER

"Inmates in Oregon state prisons must obtain approval from a Therapeutic Level of Care (TLC) Committee to receive everything from fish oil supplements to pain relief medications to medical scans needed to diagnose and provide adequate medical care." Compl. ¶ 8. Plaintiff alleges that "many of these critical decisions" are made by Dr. Roberts. *Id.* ¶ 9. "Though the TLC is ostensibly a committee, members typically present cases to Defendant Roberts, who solely determines whether an inmate is worthy or unworthy of treatment." *Id.*

In August 2021, Plaintiff reported blood in his stool and "was told that it was from ulcers and that Plaintiff needed a colonoscopy." Compl. ¶ 16. In April 2023, Plaintiff was seen by a gastrologist and Plaintiff informed her that "for at least the last 18 months, Plaintiff had been experiencing diarrhea and the ODOC medical did nothing about it and told Plaintiff he was overreacting." *Id.* ¶ 18. The gastrologist stated that Plaintiff needed an endoscopy and colonoscopy. *Id.* No endoscopy or colonoscopy was performed, and Plaintiff alleges that his condition grew worse. *Id.* ¶¶ 18-19.

On October 16, 2023, ODOC took a blood draw from Plaintiff. Compl. ¶ 20. Plaintiff alleges that he should have been taken to the hospital based on the results of the blood draw, but that he was not taken to the hospital. *Id.*

On October 20, 2024, Plaintiff felt ill and went to medical where his blood draw results were reviewed. Compl. ¶ 21. Following the review, Plaintiff was transported to the emergency room where he received a blood transfusion and a CT scan. *Id.* The

CT scan "revealed a hardened mass in his sigmoid colon and cancer was suspected." *Id.*

On October 23, 2023, Plaintiff had a colonoscopy that revealed colon cancer. Compl. ¶ 22. "Further testing revealed that the cancer had metastasized to Plaintiff's lymph nodes." *Id.*

On October 30, 2023, Plaintiff learned that he has a 3mm kidney stone. Compl. ¶ 24. Plaintiff alleges that he had complained about abdominal pain to Dr. Smith for six months prior to the CT scan but that Dr. Smith "ignored his complaints." *Id.*

Plaintiff alleges that he was not transported for his chemotherapy appointment on January 24, 2024, and that ODOC medical staff failed to schedule his weekly appointment. Compl. ¶ 27.

Dr. Roberts removed this case from Marion County Circuit Court to federal court on December 8, 2025. ECF No. 1. This motion followed.

## DISCUSSION

Plaintiff bring claims for (1) violation of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 against the individual Defendants and (2) negligence against the State of Oregon. Dr. Roberts moves to dismiss the claims against him based on failure to state a claim and qualified immunity.

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or

statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Here, Plaintiff's claim against Dr. Roberts concerns the failure to provide adequate medical care under the Eighth Amendment. Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To sustain this claim, a plaintiff must establish the existence of a "serious medical need" and show that the defendant's "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "A prison official acts with deliberate indifference only if the prison official knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks and citation omitted, cleaned up). This standard "requires more than ordinary lack of due care." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* (internal quotation marks and citation omitted). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi*, 391 F.3d at 1057 (internal quotation marks and citation omitted). Where,

as here, an inmate alleges that the delay in medical treatment amounts to deliberate indifference, he must show that the delay caused "significant harm and Defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (internal quotation marks and citation omitted).

Here, Dr. Roberts asserts that Plaintiff has failed to state a claim against him because Plaintiff does not allege, except in the most conclusory terms, that Dr. Roberts was ever involved in or even aware of Plaintiff's medical condition or treatment or in the alleged denial or delay in care. The Complaint alleges that Plaintiff's treating providers were Dr. Smith and Ms. Harris. Dr. Roberts, as chief of medicine, is alleged to have been part, and perhaps the deciding part, of the TLC Committee that approves inmate medical care but there is no clear allegation that Plaintiff's medical issues were referred to the TLC Committee or that Dr. Roberts made any decision connected to Plaintiff's care. The Court concludes that Plaintiff has failed to sufficiently allege a direct role by Dr. Roberts in his Eighth Amendment injury.

In addition to alleging a direct role, Plaintiff also seeks to hold Dr. Roberts liable under a theory of supervisory liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "A defendant may be held liable as a supervisor under § 1983 'if

there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  Under either theory, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Id.* (internal quotation marks and citation omitted).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* at 1207-08 (internal quotation marks and citation omitted, cleaned up).  The Ninth Circuit has explained, however, that a court should not accept "wholly conclusory" allegations that supervisor reviewed and approved the plans of the supervisor's reports as supporting that the supervisor knew of resulting allegedly unconstitutional conduct.  *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2021).

Plaintiff argues that Dr. Roberts, in his "supervisory and policymaking role[ ], knew of, acquiesced in, and perpetuated a system of inadequate medical care within ODOC that resulted in widespread denial and delay of necessary treatment,"; that he "failed to train, supervise, or discipline subordinate staff regarding constitutional standards of care,"; and that he "failed to correct known unconstitutional practices— including unilateral denial of medical treatment by the TLC system and systemic delay in specialist referrals."  Compl. ¶¶ 40-42.  Specific to Dr. Roberts, Plaintiff

Page 7 –OPINION & ORDER

alleges that Dr. Roberts "directly and personally participated in and established ODOC medical care policies and procedures that prioritized budgetary constraints and 'key performance measures' over inmate medical need, resulting in systemic denial and delay of medically necessary care." *Id.* ¶ 43. Plaintiff alleges that these policies and Dr. Roberts' actions were the moving force behind his injury. *Id.* ¶ 46.

Once again, however, Plaintiff's allegations against Roberts are conclusory. They rely on the TLC Committee system and the denial of care based on cost metrics, and Roberts's alleged role in both, but there is no clear allegation that Plaintiff's condition or proposed treatment were ever referred to a TLC Committee or denied based on cost. "[W]hen 'there is no allegation of a *specific* policy implemented by the Defendant or a *specific* event or events instigated by the Defendant,' the Ninth Circuit has made clear that a complaint is too conclusory to plausibly state a claim." *Munoz v. Oregon*, Case No. 6:22-cv-1348-SI, 2025 WL 3187572, at *6 (D. Or. Nov. 14, 2025) (quoting *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012), cleaned up, emphasis in original). The Court concludes that the Complaint, as presently pleaded, falls short of establishing such a specific event instigated by Dr. Roberts or specific policy implemented by Dr. Roberts was the cause of Plaintiff's injury. Accordingly, Plaintiff has failed to state a claim for supervisory liability for which Dr. Roberts should be personally held liable.

The Court concludes that Plaintiff has failed to state a claim for violation of his Eighth Amendment rights against Dr. Roberts and so the motion to dismiss will be granted. Because these defects might be remedied by the allegation of additional

facts, dismissal shall be with leave to amend. Because the claims are subject to dismissal on other grounds, the Court need not reach Dr. Roberts' qualified immunity argument.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss, ECF No. 5, is GRANTED. The claims against Defendant Warren Roberts are DISMISSED with leave to amend. Plaintiff shall have thirty (30) days from the date of this Order to submit an amended complaint.

It is so ORDERED and DATED this _____30th_____ day of April 2026.

 /s/Ann Aiken
ANN AIKEN
United States District Judge